IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> vs. ) <br> ) <br> ANTHONY SADERIS COBBS, ) <br> ) <br> Defendant. ) <br> _____ ) | No. 2:23-cr-00741-DCN-1 <br><br> **ORDER** |

The following matter is before the court on defendant Anthony Saderis Cobbs's ("Cobbs") motion to dismiss the indictment, ECF No. 29. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

On September 12, 2023, the grand jury returned a two-count indictment. ECF Nos. 1; 2. It charges that on or about September 21, 2022, (Count 1) and on or about March 19, 2023, (Count 2) Cobbs knowingly possessed a firearm and ammunition having previously been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8). ECF No. 1 at 1–2. An arrest warrant was issued on September 12, 2023. ECF No. 6. Cobbs pleaded not guilty on September 26, 2023. ECF No. 15.

Since the charges are premised on Cobbs's previous felony convictions, the court also sets forth the convictions which put Cobbs within the purview of § 922(g)(1). On September 13, 2013, Cobbs was convicted of unlawful carrying of a pistol and common law robbery to include strong arm robbery. ECF No. 11 at 2. On July 9, 2018, Cobbs was convicted of unlawful carrying of a pistol and pointing and presenting firearms at a person. Id. Finally, on February 4, 2022, Cobbs was convicted of the sale or delivery of

1

a pistol to, and possession by, certain persons unlawful. Id. Under South Carolina law, each of these five convictions have a maximum penalty exceeding one year.

On November 29, 2023, Cobbs filed a motion to dismiss the indictment. ECF No. 29. On December 14, 2023, the United States of America (the "government") responded in opposition, ECF No. 32, to which Cobbs replied on January 19, 2024, ECF No. 33. As such, the matter is fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Fed. R. Crim. P. 12(b)(3)

The court assumes that this motion is made pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, which sets forth certain defects in the indictment that can be brought before the court on a pretrial motion.[1] Fed. R. Crim. P. (12)(b)(3). Pursuant to Fed. R. Crim. P. 12(b)(3)(B), the district court may, at any time during the pendency of a case, hear a defendant's claim that an indictment fails to state an offense or is otherwise defective. See In re Civil Rights Cases, 109 U.S. 3, 8–9 (1883). An indictment is defective if it charges a violation of an unconstitutional statute. See United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004). Upon a finding that an indictment is defective, the district court must dismiss the indictment.

---

[1] Cobbs states that the motion is brought "pursuant to Rule 12 of the Federal Rules of Criminal Procedure." ECF No. 29 at 1. No specific provision is cited, thus requiring the court to presume, based on the substance of the motion, that Scott brings the motion pursuant to Fed. R. Crim. P. 12(b)(3), which governs motions that must be made before trial and includes alleging that there was "a defect in the indictment or information, including . . . failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).

2

### B. Facial Challenge

"To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which the Act would be valid.'" United States v. Hosford, 843 F.3d 161, 165 (4th Cir. 2016) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)); see Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008). "Because of this stringent standard, a facial challenge is perhaps 'the most difficult challenge to mount successfully.'" Hosford, 843 F.3d at 165. A party ordinarily "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [law] would be valid,' i.e., that the law is unconstitutional in all of its applications." Wash. State Grange, 552 U.S. at 449 (first alteration in original) (quoting Salerno, 481 U.S. at 745).

### C. Second Amendment

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022), the Supreme Court clarified the appropriate standard for analyzing Second Amendment claims. The Supreme Court held that lower courts had been incorrect in reading precedent to require a means-end analysis in evaluating Second Amendment claims. Id. at 23–24. Instead, the Court explained that District of Columbia v. Heller, 554 U.S. 570 (2008), held, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms" for self-defense. Id. at 20 (quoting Heller, 554 U.S. at 595). Further, the Supreme Court emphasized that "Heller and McDonald [v. City of Chicago, 561 U.S. 742 (2010),]

expressly rejected the application of any" means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." Id. at 23 (first quoting Heller, 554 U.S. at 634; and then citing McDonald, 561 U.S. at 790–91). In place of a means-end analysis, then, the Supreme Court articulated the following standard for considering Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

In applying Bruen's standard, courts must first address the threshold question of whether the Second Amendment's plain text protects the conduct that is being regulated. Id. at 17, 24. If it does, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 19. This requires courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." Id. at 26. Because "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them," id. at 34 (quoting Heller, 554 U.S. at 634–35), the Second Amendment's "meaning is fixed according to the understandings of those who ratified it," id. at 28. Thus, in assessing "unprecedented societal concerns or dramatic technological changes" that could not have been anticipated by the Founders, "the historical inquiry that courts must conduct will often

4

involve . . . determining whether a historical regulation is a proper analogue[2] for a distinctly modern firearm regulation." Id. at 28–29.

However, the Court noted that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30.  Instead, "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." Id.  "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id.; see also United States v. Rahimi, 144 S. Ct. 1889, 1897 (2024) ("These precedents [directing courts to examine the historical tradition of firearm regulation] were not meant to suggest a law trapped in amber. . . [h]olding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers."); id. at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under Bruen demands a wider lens: Historical regulations reveal a principle, not a mold.").

### III.   DISCUSSION

Cobbs brings a facial challenge to § 922(g)(1).  A facial challenge to a legislative act requires the challenger to "establish that no set of circumstances exists under which the Act would be valid." Salerno, 481 U.S. at 745.  Thus, Cobbs bears the burden of showing that under no set of circumstances is the Act valid.  See id.

In the wake of Bruen, the Fourth Circuit has unequivocally stated that § 922(g)(1) is facially constitutional.  United States v. Canada, 103 F.4th 257, 258 (4th Cir. 2024);

---

[2] Google says that "'analog' is standard in American English, while 'analogue' is standard in British English."  Since the Supreme Court opts for "analogue" and it "grades my papers," this court will use "analogue."

5

United States v. Price, 2024 WL 3665400, at *6 n.4 (4th Cir. Aug. 6, 2024) (en banc). In Canada, the court expressly rejected Canada's argument that § 922(g)(1) is facially unconstitutional; instead finding the federal felon-in-possession ban to be facially constitutional. 103 F.4th at 258. That panel noted that while the law of the Second Amendment is "in flux . . . in the wake of [] Bruen," the facial constitutionality of § 922(g)(1) is not a difficult question. Id. That court further stated that § 922(g)(1) "has a plainly legitimate sweep" and may constitutionally be applied in at least some set of circumstances. Id. Finally, it gave an example and, in so doing, unequivocally stated that "the government may constitutionally forbid people who have been found guilty of [drive-by-shooting, carjacking, armed bank robbery, or even assassinating the President of the United States] from continuing to possess firearms." Id. at 258–59.

In Price, the Fourth Circuit, sitting en banc, noted that, as a convicted felon, Price was "likely not one of the 'law-abiding' citizens the Bruen Court easily concluded were about 'the people' whom the Second Amendment protects." 2024 WL 3665400, at *6 n.4 (citing Bruen, 597 U.S. at 31–32). The court reiterated its conclusion that 18 U.S.C. § 922(g)(1) "is facially constitutional because it has a 'plainly legitimate sweep.'" Id. (quoting Canada, 103 F.4th at 258). Ultimately, the court left open the question of whether "a person with a felony conviction (or a particular kind of felony conviction, like a conviction for a violent crime) may be included within 'the people' for purposes of the Second Amendment; and if so, whether they can nevertheless be disarmed consistent with the nation's historical tradition of firearm regulation." Id. In practical terms, the court "declined to opine on the open questions regarding as-applied challenges and nonviolent felons" because the answers to those questions did not affect the outcome of

6

the question before the court.  Id.  Relevant to the question presented in this case, the Fourth Circuit unambiguously rejected a facial challenge to § 922(g)(1).  See id.

The court's conclusion as to the facial constitutionality of § 922(g)(1) accords with prior Fourth Circuit cases on this issue that were decided in the wake of Heller—but prior to Bruen—which did not rely on the means-end analysis, but rather a review of the plain text of the amendment.[3]  See Moore, 666 F.3d at 318–19; United States v. Pruess,

---

[3] The Fourth Circuit's decisions in Moore, 666 F.3d at 318–19, and in Pruess, 703 F.3d at 245–48, made in the wake of Heller but prior to Bruen, likely foreclose this court from finding that a convicted felon is a protected member of "the people" of the Second Amendment.  In Moore, the court considered a facial and as-applied challenge to § 922(g)(1) by a defendant with two previous felony convictions for selling or delivering cocaine, three common law robberies, and two assaults with a deadly weapon on a government official.  Moore, 666 F.3d at 315.  In Pruess, the Fourth Circuit confronted an as-applied challenge to § 922(g)(1) by a defendant previously convicted of "numerous firearms violations."  Pruess, 703 F.3d at 244.  His convictions involved dealing firearms—not using them—thus the defendant considered himself a "non-violent felon" and thereby entitled to protection by the Second Amendment.  Id. at 245.  Though the analysis in each case did not follow the exact two-step inquiry set forth in Bruen, the Fourth Circuit analyzed whether § 922(g)(1) burdens conduct that comes within the scope of the Second Amendment—i.e., whether the possession of a firearm by a convicted felon is protected by the Second Amendment—which is a similar inquiry to the first step of the Bruen analysis.  See Moore, 666 F.3d at 317, 319; Pruess, 703 F.3d at 246; Bruen, 597 U.S. at 19 (determining that the first step in the predominant circuit court framework was "broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history").

Thus, the decisions in Moore and Pruess did not rely on the means-end analysis which Bruen abrogated and thereby remain good law.  See Payne v. Taslimi, 998 F.3d 648, 654 (4th Cir. 2021) ("Only by granting en banc review may we apply stare decisis balancing to overrule precedent set by a prior panel (or a prior en banc court)"); see also United States v. Finney, 2023 WL 2696203, at *3 (E.D. Va. Mar. 29, 2023) ("Moore and Pruess did not rely on the second step of the two-step test that Bruen abrogated."); United States v. Fowler, 2024 WL 197601, at *5 (E.D. Va. Jan. 18, 2024) ("No decision by the Fourth Circuit has expressly overruled Moore or Pruess, and because those decisions did not rely on the second step of the two-step framework that Bruen abrogated, . . . , Moore and Pruess remaining binding precedent that the Court must faithfully apply.").  The Fourth Circuit has sidestepped the question of "whether Bruen sufficiently unsettled the law in this area to free [the Fourth Circuit] from [its] otherwise-absolute obligation to follow this Court's post-Heller but pre-Bruen holdings rejecting constitutional challenges

703 F.3d 242, 245–48 (4th Cir. 2012). It also accords with guidance from the Supreme Court in which it recently reiterated that "many [categorical] prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" Rahimi, 144 S. Ct. at 1902 (quoting Heller, 554 U.S. at 626). Thus, binding precedent leads the court to reject Cobbs's facial challenge to the constitutionality of § 922(g)(1). Echoing the Fourth Circuit's own rationale, the court need not resolve whether § 922(g)(1)'s constitutionality turns on the definition of the "people" at the first step of Bruen, a history and tradition of disarming dangerous people considered at step two, or the Supreme Court's repeated references to "law-abiding citizens" and "longstanding prohibitions on the possession of firearms by felons." See Canada, 103 F.4th at 258. The court denies Cobbs's motion to dismiss based on a facial challenge to § 922(g)(1).

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**August 14, 2024**
**Charleston, South Carolina**

---

to this same statute. Canada, 103 F.4th at 258 (citing Moore, 666 F.3d at 318). Nevertheless, these cases remain instructive to the challenge presently before the court.

8